1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

KENDELL HULL,                      )
9                                   )
          Petitioner,               )
10                                  )
          v.                        )    CIV 06-02345 PHX DGC (MEA)
11                                  )
ELIZABETH ERICKSON and              )    REPORT AND RECOMMENDATION
12  ARIZONA ATTORNEY GENERAL,        )
                                    )
13        Respondents.               )
    _____ )
14

TO THE HONORABLE DAVID G. CAMPBELL:
15

16          On October 2, 2006, Petitioner filed a *pro se* petition

17  seeking a writ of habeas corpus pursuant to 42 U.S.C. § 2254,

    challenging his criminal conviction by an Arizona state court.
18
    Respondents filed an Answer to Petition for Writ of Habeas
19
    Corpus ("Answer") (Docket No. 10) on December 15, 2006.
20
    Respondents argue the action for habeas relief was not timely
21
    filed and, therefore, that the petition must be denied and
22
    dismissed with prejudice.  Additionally, Respondents assert the
23
    Court should not consider the merits of Petitioner's claims for
24
    habeas relief because Petitioner procedurally defaulted his
25
    federal habeas claims in the state courts and he has not shown
26
    cause for, and prejudice arising from, his procedural default of
27
    his claims.
28

**I Procedural History**

In 2003 a Maricopa County Grand Jury issued an indictment charging Petitioner with first-degree murder, felony burglary, and aggravated assault. Response, Exh. A.[1] Petitioner did not enter into a plea agreement regarding the charges stated in the indictment, however, on June 15, 2004, Petitioner pled guilty to each of the charges stated in the indictment.  Id., Exh. G, Exh. H, Exh. I.

Petitioner moved to withdraw his guilty pleas one month later, on July 14, 2004.  Id., Exh. I.  Petitioner asserted that,

> at the time he pleaded guilty he was not aware that the sentence on the aggravated assault would commence only after the sentence on the murder charge was completed. [Petitioner] contends that he believed that the sentence on the aggravated assault would begin at the time he had completed 25 years on the murder charge and not later. [Petitioner] contends that he never would have pleaded guilty had he known the consecutive sentence on the aggravated assault would/could commence later than after he served 25 years in prison on the murder charge.

Id., Exh. I.  Petitioner ultimately withdrew the motion to withdraw his guilty pleas.  Id., Exh. L at 8, Exh. Q at 7.

Multiple sentencing memoranda and a presentence report were filed.  Id., Exhs. M-P.  On September 27, 2004, a hearing was conducted regarding the sentences to be imposed.  Id., Exh.

---

[1] The indictment alleged Petitioner entered the residence of his ex-wife's parents, where she was then residing with their children, shot his ex-wife's father, resulting in his death, and shot at his ex-wife's brother as the brother fled the scene.

1 R.

2           Petitioner was sentenced to an aggravated term of 7.5
3 years imprisonment pursuant to his conviction for aggravated
4 assault.   Id., Exh. R.   Petitioner was sentenced to life in
5 prison with the possibility of parole after he had served 25
6 years pursuant to his conviction on the charge of first-degree
7 murder; this sentence was ordered to be served after Petitioner
8 served his sentence for aggravated assault.   Id., Exh. R.
9 Additionally, Petitioner was also sentenced to an aggravated
10 term of 10.5 years imprisonment pursuant to his conviction for
11 burglary, this sentence to be served consecutive to the term
12 imposed for aggravated assault and concurrent with the sentence
13 for murder.   Id., Exh. R.   Accordingly, Petitioner was sentenced
14 to a term of 7.5 years, followed by a term of 25 years to life,
15 with the possibility of release, i.e., Petitioner must serve
16 32.5 years imprisonment before he is entitled to consideration
17 of his release.   Id., Exh. R at 2-4, Exh. V at 2-3.[2]

18           Petitioner filed a motion for reconsideration of his
19 motion to withdraw his guilty pleas, which motion was denied on
20 October 15, 2004.   Id., Exh. S & Exh. V.   On November 16, 2004,
21 Petitioner filed a notice of post-conviction relief.   Id., Exh.

22
23
24
25

26           [2] Petitioner was born in 1965 and was approximately 39 years
of age at the time of his sentencing.  Accordingly, Petitioner would
be approximately 71 years of age before he is eligible for release
27 from prison.

28                                    -3-

Y.[3]  Petitioner's appointed counsel filed a notice with the trial court averring she could find no colorable issues to raise on Petitioner's behalf.  Id., Exh. Z.  Petitioner filed a *pro se* petition for post-conviction relief, asserting he had been denied his right to a speedy trial, that his guilty pleas were not knowing and voluntary, and that the trial court "changed its mind" regarding the sentences imposed.  Id., Exh. BB.

On October 5, 2005, the Arizona Superior Court denied the petition for post-conviction relief, concluding each of the claims stated by Petitioner were without merit.  Id., Exh. EE. Although Petitioner sought advice from the Arizona Superior Court as to how he could appeal the decision denying relief, Petitioner did not ever appeal the Superior Court's decision denying post-conviction relief to the Arizona Court of Appeals. See id., Exh. HH.

Petitioner filed his federal habeas petition on September 11, 2006.  Petitioner asserts he is entitled to relief because he was denied his right to the effective assistance of counsel and because he was denied his right to a speedy trial.

**II Analysis**

**A. Relevant statute of limitations**

The Petition for Writ of Habeas Corpus is barred by the applicable statute of limitations as found in the Antiterrorism

---

[3] Pursuant to the "mailbox rule," the Court considers the relevant pleading "filed" on the date the pleading was signed by Petitioner.  See, e.g., Davis v. Woodford, 446 F.3d 957, 960 (9th Cir. 2006).

1  and Effective Death Penalty Act ("AEDPA").

2         Because Petitioner pled guilty, pursuant to Arizona law
3  he had no right to a direct appeal and his convictions arguably
4  became "final" for the purpose of federal habeas relief on the
5  date judgment was entered and he was sentenced by the state
6  trial court, i.e., September 27, 2004.   See Montgomery v.
7  Sheldon, 181 Ariz. 256, 258 (1995); Isley v. Arizona Dep't of
8  Corr., 383 F.3d 1054, 1056 (9th Cir. 2004).   Cf.
9  Hernandez-Almanza v. United States Dep't of Justice, INS, 547
10  F.2d 100, 103 (9th Cir. 1976) (holding, for purposes of
11  immigration proceeding, that a criminal conviction was final
12  when the defendant entered a guilty plea and waived direct
13  appeal).[4]  Therefore, Petitioner's convictions became final after
14  the 1996 effective date of the AEDPA and his habeas petition is
15  subject to its one-year statute of limitations.

16         The AEDPA requires state prisoners to file any petition
17  for federal habeas corpus relief within one year of the date
18  that their state court convictions become "final."   See 28
19  U.S.C. § 2244(d)(1)(A) (1994 & Supp. 2006) ("A 1-year period of
20  limitation shall apply to an application for a writ of habeas
21  corpus by a person in custody pursuant to the judgment of a
22  State court.").   The running of this one-year statute of
23  limitations is tolled during any period when "a properly filed

24  ─────────────────
25         [4] This conclusion has been regularly followed in section
   2254 habeas cases arising in the United States District Court for the
   District of Arizona.  See, e.g., Moore v. Schriro, 2006 WL 2827131,
26  at *4; Smith v. Schriro, 2006 WL 2547294, at *2.

27

28                                -5-

1 application for state post-conviction or other collateral review

2 with respect to the pertinent judgment or claim is pending" in

3 any state court.   See id. § 2244(d)(2); see also Calderon v.

4 United States Dist. Court (Beeler), 128 F.3d 1283, 1286-87 (9th

5 Cir. 1997), overruled on other grounds by Calderon v. Kelly, 163

6 F.3d 530 (9th Cir. 1998) (en banc).

7          Petitioner's conviction became final, for purposes of

8 the AEDPA's statute of limitations on September 27, 2004.

9 Therefore, Petitioner had until September 26, 2005, to file his

10 habeas petition, absent any statutory or equitable tolling of

11 the statute of limitations.

12          The one-year statute of limitations regarding

13 Petitioner's federal habeas action ran against Petitioner for

14 approximately 49 days, from September 27, 2004, when his

15 conviction became final, until November 16, 2004, when he filed

16 his action for state post-conviction relief, which statutorily

17 tolled the statute of limitations.[5]   The statute of limitations

18 was tolled until October 5, 2005, when the Arizona Superior

19 Court denied Petitioner's claims for relief and dismissed his

20

21          [5] The motion for reconsideration of the decision denying
Petitioner's motion to withdraw his guilty pleas was, arguably, not

22 a "properly filed action for state post-conviction relief," and,
therefore, did not toll the statute of limitations.   See Pace v.

23 DiGuglielmo, 544 U.S. 408, 412-13, 125 S. Ct. 1807, 1811-14 (2005);
Bonner v. Carey, 425 F.3d 1145, 1146 (9th Cir. 2005), cert. denied,

24 127 S. Ct. 132 (2006).   Compare Richardson v. Newland, 171 Fed. App.
156, 157 (9th Cir. 2006), and Douglas v. Horn, 359 F.3d 257, 262 (3d

25 Cir. 2004), with Draughon v. DeWitt, 65 Fed. App. 949, 951 (6th Cir.
2003).

26

27

28                                   -6-

1 Rule 32 petition.

2          Petitioner had thirty days to seek review of this
3 decision by the Arizona Court of Appeals, even though he did not
4 take such an appeal, and, therefore, the statute of limitations
5 on his federal habeas action was further statutorily tolled
6 until November 4, 2005.  See Gibson v. Klinger, 232 F.3d 799,
7 803-04 (10th Cir. 2000) ("Thus, we hold today that, regardless
8 of whether a petitioner actually appeals a denial of a
9 post-conviction application, the limitations period is tolled
10 during the period in which the petitioner could have sought an
11 appeal under state law."); Swartz v. Meyers, 204 F.3d 417,
12 420-24 (3d Cir. 2000) (holding that, because a judgment is not
13 final until the time for seeking review expires, the word
14 "pending" includes that time period, whether or not such review
15 is sought, and collecting cases so holding).   See also
16 Lookingbill v. Cockrell, 293 F.3d 256, 266 (5th Cir. 2002)
17 (collecting cases so holding).

18          Petitioner filed his federal habeas action on September
19 11, 2006.  Between November 5, 2005 and September 11, 2006, is
20 a time period of 309 days.  Accordingly, Petitioner's federal
21 habeas action was filed within the relevant 365-day statute of
22 limitations because only 358 days of untolled time (49 days
23 after his conviction became final and the statute of limitations
24 was tolled by the initiation of his Rule 32 action and 309 days
25 while his Rule 32 action was "pending") passed between the date
26 his conviction became final and the date his federal habeas
27 action was filed.

28                                   -7-

1        **B. Applicable law regarding exhaustion**

2        A state prisoner must "exhaust" a claim in the state

3 courts before the District Court may grant federal habeas relief

4 on the merits of the claim.  See Coleman v. Thompson, 501 U.S.

5 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991); Castille v.

6 Peoples, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989).  To

7 properly exhaust a claim, the petitioner must afford the state

8 the opportunity to rule upon the merits of the claim by "fairly

9 presenting" the claim to the state's "highest" court in a

10 procedurally correct manner.  See, e.g., Castille, 489 U.S. at

11 351, 109 S. Ct. at 1060; Rose v. Palmateer, 395 F.3d 1108, 1110

12 (9th Cir.), cert. denied, 125 S. Ct. 2971 (2005).[6]

13        The Ninth Circuit Court of Appeals has concluded that,

14 in non-capital cases arising in Arizona, the "highest court"

15 test of the exhaustion requirement is satisfied if the habeas

16 petitioner presented his claim to the Arizona Court of Appeals,

17 either on direct appeal or in a petition for post-conviction

18 relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir.

19 1999).  See also Castillo v. McFadden, 399 F.3d 993, 998 n.3

20 (9th Cir.), cert. denied, 126 S. Ct. 348 (2005).

21        A federal habeas petitioner has not exhausted a federal

22 habeas claim if he still has the right to raise the claim "by

23 any available procedure" in the state courts.   28 U.S.C. §

24

25        [6]Prior to 1996, the federal courts were required to dismiss
a habeas petition which included unexhausted claims for federal habeas
relief.  However, section 2254 now states: "An application for a writ
26 of habeas corpus may be denied on the merits, notwithstanding the
failure of the applicant to exhaust the remedies available in the
27 courts of the State."  28 U.S.C. § 2254(b)(2) (1994 & Supp. 2006).

28

1  2254(c) (1994 & Supp. 2006).  Because the exhaustion requirement

2  refers only to remedies still available to the petitioner at the

3  time they file their action for federal habeas relief, it is

4  satisfied if the petitioner is procedurally barred from pursuing

5  their claim in the state courts.  See 28 U.S.C. § 2254(c) (1994

6  & Supp. 2006); Castille, 489 U.S. at 351, 109 S. Ct. at 1060.

7  If it is clear the habeas petitioner's claim is procedurally

8  barred pursuant to state law, the claim is exhausted by virtue

9  of the petitioner's "procedural default" of the claim.

10         Procedural default occurs when a petitioner has never

11  presented a claim in state court and is now barred from doing so

12  by the state's procedural rules, including rules regarding

13  waiver and the preclusion of claims.  See Castille, 489 U.S. at

14  351-52, 109 S. Ct. at 1060; Tacho v. Martinez, 862 F.2d 1376,

15  1378 (9th Cir. 1988).[7]  "If a prisoner has defaulted a state

16  claim by 'violating a state procedural rule which would

17  constitute adequate and independent grounds to bar direct review

18  ... he may not raise the claim in federal habeas, absent a

19  showing of cause and prejudice or actual innocence.'"  Ellis v.

20  ─────────────────────

21         [7] Procedural default also occurs when a petitioner did
    present a claim to the state courts, but the state courts did not
22  address the merits of the claim because the petitioner failed to
    follow a state procedural rule.  See, e.g., Ylst v. Nunnemaker, 501
23  U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Coleman, 501 U.S. at
    727-28, 111 S. Ct. at 2553-57; Insyxiengmay v. Morgan, 403 F.3d 657,
24  665 (9th Cir. 2005); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002)
    ("A state is entitled to treat as forfeited a proposition that was not
25  presented in the right court, in the right way, and at the right
    time--as state rules define those courts, ways, and times.  Failure
26  to comply with the state's procedural rules furnishes an independent
    and adequate state ground of decision that blocks federal collateral
27  review.").

28                                    -9-

1 <u>Armenakis</u>, 222 F.3d 627, 632 (9th Cir. 2000), <u>quoting</u> <u>Wells v.</u>

2 <u>Maass</u>, 28 F.3d 1005, 1008 (9th Cir. 1994).

3        Petitioner did not properly exhaust his federal habeas

4 claims in the state courts by fairly presenting them to the

5 Arizona Court of Appeals in a direct appeal or in his action for

6 post-conviction relief.  Because the Arizona rules of criminal

7 procedure regarding timeliness, waiver, and preclusion bar

8 Petitioner from now returning to the state courts to exhaust his

9 unexhausted federal habeas claims, Petitioner has exhausted, but

10 procedurally defaulted his claims.  <u>See</u> <u>Beaty v. Stewart</u>, 303

11 F.3d 975, 987 (9th Cir. 2002)**.**

12        **C. Cause and prejudice**

13        Federal habeas relief based on a procedurally defaulted

14 claim is barred unless the petitioner can demonstrate a

15 miscarriage of justice, or cause and actual prejudice to excuse

16 his default of the claim.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750-51, 111

17 S. Ct. at 2555-56.[8]

18

19

20    [8] Review of the merits of a procedurally defaulted habeas
claim is also appropriate if the petitioner demonstrates review of the
merits of his claim is necessary to prevent a fundamental miscarriage
21 of justice.  <u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393, 124 S. Ct. 1847,
1852 (2004).  A fundamental miscarriage of justice occurs only when
22 a constitutional violation results in the conviction of one who is
actually innocent of the crime of conviction.  <u>See</u> ; <u>Murray v.</u>
23 <u>Carrier</u>, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986); <u>Thomas</u>
<u>v. Goldsmith</u>, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual
24 innocence is necessary to trigger manifest injustice relief).
        Petitioner does not assert he is actually innocent of the
25 charges against him.  Petitioner asserts his sentence was invalid and
that his guilty plea should be vacated because of the trial court's
26 "promise" with regard to imposing sentence, not because he did not
commit the crimes involved or because he was tried in a proceeding
27 involving constitutional error.

28                              -10-

1      "Cause" is a legitimate excuse for the petitioner's
2 procedural default and "prejudice" is actual harm resulting from
3 the alleged constitutional violation.  See Thomas v. Lewis, 945
4 F.2d 1119, 1123 (9th Cir. 1991).   To demonstrate cause, a
5 petitioner must show the existence of some external factor which
6 impeded his efforts to comply with the state's procedural rules.
7 See Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir.
8 1996).   To establish prejudice, the petitioner must show that
9 the alleged error "worked to his actual and substantial
10 disadvantage, infecting his entire [criminal proceedings] with
11 error of constitutional dimensions."   United States v. Frady,
12 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982).   See also
13 Correll v. Stewart, 137 F.3d 1404, 1415-16 (9th Cir. 1998).
14 Establishing prejudice requires Petitioner to prove that, "but
15 for" the alleged constitutional violations, there is a
16 reasonable probability he would not have been convicted of the
17 same crime.   See Manning v. Foster, 224 F.3d 1129, 1135 (9th
18 Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999).
19 Although both cause and prejudice must be shown to excuse a
20 procedural default, the Court need not examine the existence of
21 prejudice if the petitioner fails to establish cause.   See Engle
22 v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43
23 (1982); Thomas, 945 F.2d at 1123 n.10.
24      **III Conclusion**
25      Petitioner did file his federal habeas action within
26 the one-year period specified by the AEDPA.   However, Petitioner
27 procedurally defaulted his federal habeas claims in the Arizona
28                              -11-

state courts.  Because Petitioner does not argue cause for nor prejudice arising from his procedural default of his federal habeas claims, the Court may not grant relief based on the merits of the claims.

**IT IS THEREFORE RECOMMENDED** that Mr. Hull's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of

1  law    in    an    order    or    judgment    entered    pursuant    to    the

2  recommendation of the Magistrate Judge.

3

4          DATED this 24th day of January, 2007.

5

6

7

8                                        _____
                                              Mark E. Aspey
9                                        United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          -13-